UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Michael Vankuiken,

    Plaintiff,

v.

Central Marine Logistics, Inc. and Indiana
Harbor Steamship Company, LLC,

    Defendants.
    _____/

Case No. 07-14543

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [18]**

This lawsuit arises from injuries Plaintiff Michael Vankuiken sustained while employed by Defendant Central Marine Logistics, Inc. as a mate's assistant aboard a vessel owned by Defendant Indiana Harbor Steamship Company, LLC. Plaintiff asserts three claims against both Defendants: (1) negligence under the Jones Act; (2) unseaworthiness under general maritime law; and (3) maintenance and cure.[1] This matter comes before the Court on Defendants' motion for summary judgment. For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

**I.**    **Facts**

Plaintiff Michael Vankuiken was employed by Defendant Central Marine Logistics, Inc. as a mate's assistant aboard the Str. Edward L. Ryerson during the 2007 sailing season.

---

[1] Plaintiff voluntarily dismissed this claim at oral argument.

(Pl.'s Resp. at 3). Plaintiff had worked aboard ships in the Great Lakes since 1996 and on the Ryerson since July of 2006. (Defs.' Mot. at 5).

The Ryerson is a bulk cargo carrier operating on the Great Lakes. (Pl.'s Resp. at 1). Its pilot house and some of the ship's crew quarters are located in the forward house at the bow. (Defs.' Mot. at 3). The vessel's after house is located at the stern and contains the engine room, galley, and additional crew quarters. (*Id.*). There are four walkways between the vessel's forward and after houses: (1) the starboard-deck walkway or "starboard wing"; (2) the portside-deck walkway or "portside wing"; (3) the starboard tunnel below deck; and (4) the portside tunnel below deck. (Defs.' Mot. at 3-4). The Ryerson's portside tunnel is used for storage and is not a safe means of transiting the vessel. (Dallas Dep. 27:23-28:2; Vankuiken Dep. 33:6-15). Defendants allege that the starboard tunnel is clear. (Defs.' Mot. at 4).

The Ryerson repeated the same cargo run many times during the 2007 sailing season: its crew would load processed iron ore in the form of 'taconite' pellets in Superior, Wisconsin and unload the pellets at Jonick Dock in Lorain, Ohio. (Pl.'s Resp. at 3). The Ryerson is a "straight-deck" vessel, which means that it uses shore-side cranes to load and unload cargo from the ship's holds. (Pl.'s Resp. at 1). The cranes operate on the side of the boat that is docked, raising and lowering clamshell buckets into the ship's holds. (*Id.* at 1-2). During loading and unloading, taconite pellets spill onto the vessel's deck. (*Id.* at 2). Pellets fall onto both sides of the deck but fall in far greater numbers onto the side of the ship closest to the shore. (LaParl Dep. 49:17-25). The Ryerson docks portside in Superior and Lorain. (Defs.' Mot. at 5).

2

Taconite pellets resemble rusty marbles. (Pl.'s Resp. at 1). Because of the recognized slipping hazard posed by pellets left on the vessel's deck, there is a customary practice for removing them. (Dallas Dep. 7:21-25). While the vessel is loading and unloading, crewmembers sweep and shovel the pellets into the holds. (Pl.'s Resp. at 2). Then, as soon as possible after the vessel leaves the dock, the decks are rinsed with high-pressure hoses. (*Id.*; Dallas Dep. 10:6-11).

On May 14, 2007, the Ryerson docked portside at the Jonick Dock in Lorain and began unloading taconite pellets. (Pl.'s Resp. at 3; Defs.' Mot. at 5). After a delayed unloading process, the Ryerson left Lorain on the night of May 16. (Pl.'s Resp. at 3). The Ryerson's crew swept the pellets during unloading. (Dallas Dep. 25:11-12). No crew member recalls the deck being swept or shoveled after the Ryerson's departure from Lorain. (Dallas Dep. 16:24-17:2; Garvey Dep. 35:20-36:21). And despite several opportunities to do so, the crew did not rinse the Ryerson's decks until the morning of May 19. (Pl.'s Resp. at 5). On May 17 some crew members were required to work on the portside deck when the Ryerson stopped at a fuel dock in Sterling, Canada and again when the Ryerson passed through the Sault Locks. (LaParl Dep. 24:1-25:8; Dallas Dep. 20: 18-22).

On the evening of May 18, 2007, Plaintiff finished his watch in the forward house and took the starboard-deck walkway to the ship's galley for dinner. (Defs.' Mot. at 4). On his walk, he noticed "one or two" pellets "here and there" on the starboard wing. (Vankuiken Dep. at 32:18). After dinner, Plaintiff took the portside-deck walkway to return to his cabin in the forward house, per his usual practice. (*Id.* at 23:18-20). While walking he noticed hydraulic fuel on the deck and stepped closer to the railing to avoid it. (*Id.* at 30:2-3; Pl.'s

3

Resp. at 4). Plaintiff testified that he often watched for slippery hydraulic fluid, which leaked from the hatch crane and blew all over the deck. (Vankuiken Dep. 23-25:20).

Midway down the port wing, Plaintiff slipped and fell on iron ore pellets. (*Id.* at 23-24). His feet flew up in front of him, and he landed on his elbow and lower back. (*Id.* at 38:6-24). When Plaintiff got up he saw a tightly-packed, two-foot diameter concentration of taconite pellets continuing up the rest of the portside deck. (*Id.* at 30:12-18). He testified that he had been watching where he was walking, looking 10-20 feet ahead, and "off to the horizon." (*Id.* at 42:18-24; 68:16-21). At the moment he fell, he had been reaching into his jacket pocket for his cellular phone. (*Id.* at 28:22-29:20).

Plaintiff testified that he had taken the portside deck because it was the shortest route to his cabin, and he had assumed that it would be clear. (*Id.* at 32-33). Plaintiff testified:

> Q: So this was not typical?
> A: Yeah. It had been so many days since we loaded, I didn't understand why it was still there. It was a total shocker for me to encounter that. You'll see one or two here and there.
> Q: We've all been on these boats and certainly an occupational hazard are the iron ore pellets?
> A: I've been a deckhand, as soon as you throw off the lines leaving any dock you're out there cleaning that wing. I was astonished.

(Vankuiken Dep. 30:25-31:9).

Pandellis Dallas, the Ryerson's Third Mate, witnessed Plaintiff's fall and observed taconite pellets down the length of the portside deck, as well as some pellets on the starboard deck. (Pl.'s Resp. at 4). Dallas encouraged Plaintiff to fill out an accident report, which he did in the pilot house with Captain Thomas Garvey and First Mate William LaParl. (*Id.*). At the time, Garvey and LaParl both observed taconite pellets on the portside deck where Plaintiff had fallen. (*Id.*).

4

LaParl testified that the starboard side of the Ryerson was kept clear for transiting and that crewmembers knew this. (LaParl Dep. 14:23-15:11, 17:12-15). Captain Garvey and Dallas testified that the crew is warned at monthly safety meetings to watch for iron ore pellets and to transit on the starboard side of the vessel. (Garvey Dep. 50:4-19; Dallas Dep. 28:20-29:6). Plaintiff testified that the focus of the warnings at these meetings is on watching for iron ore pellets while the vessel is docked. (Vankuiken Dep. 49:4-15).

After a few days Plaintiff's pain worsened, and he disembarked to go to the hospital. (Vankuiken Dep. 52:13-21, 53:14-15). He was off the boat for fifty to sixty days with shoulder and hip pain. (*Id.* at 55:15-17). He has since returned but still has shoulder pain that makes climbing, reaching, and prolonged standing difficult. (*Id.* at 56:15-20, 58:6-16). He may require surgery if his shoulder does not improve. (*Id.* at 57:14-59:5).

On September 24, 2007, Plaintiff filed this lawsuit against Central Marine Logistics, Inc., his employer, and Indiana Harbor Steamship Company, LLC, the Ryerson's owner, in state court. Defendants removed the case to this Court. This matter is now before the Court on Defendants' motion for summary judgment.

**II.  Summary Judgment Standard**

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the

5

existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

### III. Analysis

#### A. Jones Act

The Jones Act, 46 U.S.C. §30104, provides, in relevant part:

> A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer. Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section.[2]

---

[2] The Jones Act, 46 U.S.C. § 688, was repealed on October 6, 2006, but Congress added nearly identical language at 46 U.S.C. § 30104. *Taylor v. TECO Barge Line, Inc.*, 517 F.3d 372, 378 n.1 (6th Cir. 2008).

In order to recover under the Jones Act, a plaintiff must prove negligence (duty and breach). *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 598 (6th Cir. 2001). An employer's actions are judged under the 'ordinary prudence' standard. *Id.* It is the employer's duty "to provide a safe workplace for its employees." *Rannals v. Diamond Jo Casino*, 265 F.3d 442, 449 (6th Cir. 2001). A plaintiff must show that his employer breached this duty "by neglecting to cure or eliminate obvious dangers of which the employer or its agents knew or should have known." *Id.* An employer must only "'protect against foreseeable risks of harm.'" *Perkins*, 246 F.3d at 599 (internal citations omitted). For this reason, "'[t]here must be some evidence from which the trier of fact can infer that the owner either knew, or in the exercise of due care, should have known of the unsafe condition.'" *Id.* (internal citation omitted). Once a plaintiff has established negligence, he need not establish proximate causation. *Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 907-08 (6th Cir. 2006). In order to allege a prima facie cause of action under the Jones Act, a plaintiff need only show that "the employer's negligence played any part, however slight in producing the injury to the seaman." *Perkins*, 246 F.3d at 598.

In light of this "'very low evidentiary threshold'" "'for submission of Jones Act claims to a jury'" (*Rannals*, 265 F.3d at 447 (internal citation omitted)), the Sixth Circuit has expressed its "reluctance to dispose of Jones Act claims through summary judgment." *Daughenbaugh v. Bethlehem Steel Corp.*, 891 F.2d 1199, 1207 (6th Cir. 1989). "'[E]ven marginal claims are properly left for jury determination.'" *Id.* at 1205 (quoting *Leonard v. Exxon Corp.*, 581 F.2d 522, 524 (5th Cir. 1978)). A "[p]laintiff must offer 'more than a scintilla of evidence in order to create a jury question on the issue . . . but not much more.'" *Churchwell,* 444 F.3d at 903 (internal citation omitted).

For the purposes of this motion, Defendants do not dispute that the portside deck where Plaintiff fell was covered in taconite pellets and that pellets on the deck generally pose a hazard. Defendants also do not dispute that Plaintiff was injured when he slipped on the pellets and fell onto the steel deck. Defendants argue that Central Marine did not breach its duty to provide a reasonably safe workplace because it provided Plaintiff with two unobstructed walkways: the starboard deck and the starboard tunnel. (Defs.' Mot. at 9-12). Defendants assert that the *sole* cause of Plaintiff's injury was his failure to use these known safe alternatives to the portside deck as well as his failure to watch where he was walking on the portside deck. (*Id.*).

Plaintiff responds that Defendants' failure to rinse the portside deck of taconite pellets was a breach of their duty to protect against a foreseeable risk of harm, and that this breach caused Plaintiff's injury. (Pl.'s Resp. at 9). Plaintiff further responds that he was not negligent because he did know the portside deck was pellet-strewn and because he was watching where he was going while walking. (*Id.* at 4, 12-13). Plaintiff also accuses Defendants of employing an assumption-of-the-risk theory, which cannot bar recovery under the Jones Act. (*Id.* at 11-13).

Defendants are correct that if Plaintiff's negligence was the sole cause of his injury, he may not recover under the Jones Act. *Perkins*, 246 F.3d at 598; *Churchwell*, 444 F.3d at 909. Plaintiff, however, has created a genuine issue of material fact as to whether his employer was negligent. Plaintiff has presented sufficient evidence such that a reasonable juror could conclude that (1) Central Marine's failure to rinse the portside deck after unloading created an unsafe workplace; (2) that the risk of employee injury as a result of

8

leaving the taconite pellets on the portside deck was foreseeable[3]; and (3) that this negligence "played at least a slight part in producing [Plaintiff's] injury." *Merlino v. U.S. Steel Corp.*, No. 93-2403, 1995 WL 154857, at *4 (6th Cir. Apr. 6, 1995).

If the jury agrees with Defendants that Plaintiff was negligent in failing to avail himself of known, safe alternatives, it will be free to apply the doctrine of comparative negligence. *Tolar v. Kinsman Marine Transit Co.*, 618 F.2d 1193, 1195 (6th Cir. 1980)[4]; *see also Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335, 339 (5th Cir. 1997) (noting that a seaman "is obligated under the Jones Act to act with ordinary prudence under the circumstances"). That is, the jury may reduce Defendants' liability in proportion to "the degree of fault that [it] assigns to plaintiff's behavior." *Churchwell*, 444 F.3d at 908 (citing *Miller v. Am. President Lines, Ltd.*, 989 F.2d 1450, 1461-62 (6th Cir. 1993)). "Plaintiff's negligence does not 'cancel out' the defendant[s'] negligence," but only mitigates Defendants' damages. *Churchwell*, 444 F.3d at 909 (quoting *Ribitzki v. Canmar Reading & Bates, Ltd*, 111 F.3d 658, 662 (9th Cir. 1997)); *Perkins*, 246 F.3d at 598.[5] Defendants'

---

[3] Defendants' reliance on *Rutherford v. Lake Michigan Contractors, Inc.*, No. 00-1850, 2002 WL 22352 (6th Cir. Jan. 7, 2002), is misplaced. (*See* Defs.' Mot. at 10). Summary judgment was appropriate in *Rutherford* because the plaintiff failed to present any evidence that having one deckhand lift a steel cable posed a foreseeable risk of back injury. *Id.* at *2-*3. In this case, we have evidence that Plaintiff's employer usually rinsed all decks because it was aware of the risk posed by cargo residue.

[4] Defendants cite *Tolar* for the proposition that the presence of 'a known, safe alternative' necessarily *precludes* a finding of negligence on the part of Central Marine. (Defs.' Mot. at 11). The Sixth Circuit in *Tolar* merely stated that the presence of a 'known, safe alternative' could indicate that the plaintiff was *also* negligent. *Tolar*, 618 F.2d at 1195-96. Such a finding would not render a negligent defendant blameless.

[5] Plaintiff is correct that assumption of the risk is not a valid defense barring recovery under the Jones Act. *Socony-Vacuum Oil Co. v. Smith*, 305 U.S. 424, 432 (1939); *Churchwell*, 444 F.3d at 909. A seaman cannot be barred recovery for working despite

motion for summary judgment as to Central Marine's liability under the Jones Act is DENIED.

Defendants argue that summary judgment is appropriate as to Plaintiff's Jones Act claim against Indiana Harbor Steamship Company because it is not Plaintiff's employer. (Defs.' Mot. at 12). A seaman may only bring a negligence action under the Jones Act against his employer. *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 788 n.6 (1949). For this reason, Defendant's motion for summary judgment as to Plaintiff's Jones Act claim against Indiana Harbor Steamship Company is GRANTED.

**B. Unseaworthiness**

Under the common law of admiralty, "'a ship owner owes to the seaman employed on its vessels an absolute, nondelegable duty to provide a seaworthy vessel.'" *Daughenbaugh*, 891 F.2d at 1207 n.3 (quoting *Harbin v. Interlake S.S. Co.*, 570 F.2d 99, 103 (6th Cir. 1978)). "A vessel is unseaworthy if the vessel and its appurtenances are not 'reasonably fit for their intended use.'" *Churchwell*, 444 F.3d at 904 (quoting *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960)). "The standard is not perfection, but reasonable fitness," and an owner is not required to provide "an accident-free ship." *Mitchell*, 362 U.S. at 550. This duty is "distinct and separable" from an employer's duty under the Jones Act and requires no finding of negligence. *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 774 (9th Cir. 1981); *see also Perkins*, 246 F.3d at 602, n.6. A ship owner "is

---

unavoidable danger. *Socony-Vacuum Oil Co.*, 305 U.S. at 428. But a jury may find Plaintiff contributorily negligent for "proceed[ing] in an unsafe area of the ship" if "there was a safe alternative available to him." *Tolar*, 618 F.2d at 1195; *Socony-Vacuum Oil Co.*, 305 U.S. at 432.

strictly liable for personal injuries caused by his or her vessel's unseaworthiness." *Churchwell*, 444 F.3d at 904.

In order to prevail on an unseaworthiness claim, a plaintiff must prove: (1) that a "vessel and its appurtenances were not 'reasonably fit for their intended use'" and (2) that the "vessel's unseaworthy condition was the proximate cause of his or her injuries." *Churchwell*, 444 F.3d at 904 (internal citation omitted); *see also Perkins*, 246 F.3d at 602. Unseaworthiness proximately caused an injury if it "'played a substantial part in . . . causing the injury" and "the injury was either a direct result or a reasonably probable consequence of unseaworthiness.'" *Miller*, 989 F.2d at 1463-6 (internal citation omitted). An owner need not have actual or constructive notice of the unseaworthy condition to be liable. *Mitchell*, 362 U.S. at 549. An owner is no less liable for unseaworthy conditions that "aris[e] after the vessel leaves her home port" or for unseaworthy conditions that may be temporary. *Id.* at 568-69; *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 498 (1971).

Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to each element of his unseaworthiness claim. A reasonable juror could conclude that a high concentration of taconite pellets on the portside deck two days after unloading rendered the Ryerson not "reasonably fit for [its] intended use." *See Mitchell*, 362 U.S. at 540; 550 (slime and fish gurry on ship's rail rendered it unseaworthy); *Schell v. Chesapeake & O. Ry.* Co, 395 F.2d 676, 677-78 (4th Cir. 1968) (grease on ship's step rendered ship unseaworthy); *Merlino*, 1995 WL 154857, at *6 (worn nonskid paint on ship's deck rendered ship unseaworthy). A reasonable juror could also find that the pellet-strewn portside deck was a "substantial" cause of Plaintiff's injury.

Defendants argue that the Ryerson was not unseaworthy because Plaintiff failed to avail himself of known, safe methods of traversing the ship. (Defs.' Mot. at 13-14). Specifically, Defendants claim that Plaintiff's failure to take the unobstructed starboard deck or starboard tunnel and to watch where he was going while walking on the portside deck precludes a finding of unseaworthiness. (Defs.' Mot. at 12-14).[6] It is true that if Plaintiff's failure to take a known, safe alternative was the *sole* cause of his injury, Defendant Indiana Harbor cannot be liable for unseaworthiness. This is because the allegedly unseaworthy condition could not have played a "substantial part" in causing Plaintiff's injury if Plaintiff alone was to blame.[7] *See Brandon v. Owensboro Harbor Serv., Inc.*, No. 96-6613, 1998 WL 252763, at *3 (6th Cir. May 11, 1998). As explained above, however, Plaintiff has presented sufficient evidence such that a reasonable juror could find that his negligence was *not* the sole cause of his injury.

The doctrine of comparative negligence applies to unseaworthiness claims just as it does to Jones Act claims. *Churchwell*, 444 F.3d at 908. If a jury concludes that Plaintiff's negligence was partly to blame for his injury, it will lessen Defendant's liability for unseaworthiness. *See Burden v. Evansville Materials, Inc.*, 840 F.2d 343, 346, 348 (6th Cir. 1988) (affirming district court's finding that ship was unseaworthy even though plaintiff's

---

[6] Defendants' reliance on *Tolar v. Kinsman Marine Transit Company,* 618 F.2d 1193 (6th Cir. 1980), is misplaced. The Sixth Circuit in *Tolar* held that there could be no finding of contributory negligence in the absence of a known, safe alternative, not that the presence of a known, safe alternative precludes a finding of unseaworthiness. *Id.* at 1195.

[7] That some crew members were *required* to work on the portside deck does not lessen Plaintiff's burden of showing that the unseaworthy condition was the proximate cause of *his* injury. *See Cook v. Am. S.S. Co.*, 53 F.3d 733, 741 (6th Cir. 1995), *abrogated on other grounds by Gen. Elec. Co. v. Joiner,* 522 U.S. 136 (1997).

12

negligence was 80% to blame for his injury).  The Sixth Circuit has explained that, although unseaworthiness is not a negligence action, a plaintiff's negligence decreases the degree to which an unseaworthy condition caused the injury and, thus, the ship owner's liability. *Merlino*, 1995 WL 154857, at *6 n.2.  Defendant's motion for summary judgment as to Plaintiff's claim against Indiana Harbor Steamship Company for unseaworthiness is DENIED.

Defendants also argue that summary judgment is appropriate as to Plaintiff's unseaworthiness claim against Central Marine Logistics, Inc. because it is not the Ryerson's owner.  (Defs.' Mot. at 14).  It is the ship owner's duty to maintain a seaworthy vessel.  *See generally Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494 (1971). Because Defendant Central Marine Logistics, Inc. is not the Ryerson's owner, Defendants' motion for summary judgment as to this claim is GRANTED.

## IV. Conclusion

For the above-stated reasons, Defendants' motion for summary judgment is DENIED as to (1) Plaintiff's claim against Central Marine Logistics, Inc. under the Jones Act and as to (2) Plaintiff's claim against Indiana Harbor Steamship Company, LLC for unseaworthiness.  Defendants' motion is GRANTED as to (3) Plaintiff's claim against Indiana Harbor Steamship Company, LLC under the Jones Act and as to (4) Plaintiff's claim against Cental Marine Logistics, Inc. under the unseaworthiness doctrine.


        s/Nancy G. Edmunds  
        Nancy G. Edmunds  
        United States District Judge

Dated: October 15, 2008

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 15, 2008, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager